UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KRISTINE ESSER SLENTZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:16-cv-02568-JMS-MJD |
| | ) |
| EMMIS OPERATING COMPANY, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant Emmis Operating Company's ("Emmis") Motion for Summary Judgment. [Filing No. 40.] Emmis seeks judgment as a matter of law on Plaintiff Kristine Esser Slentz's claims in her Complaint, [Filing No. 1], that Emmis subjected her to sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Ms. Slentz, who previously worked for Emmis, alleges that two of her co-workers sexually harassed her and created a hostile work environment on the basis of her sex. Also pending before the Court are Emmis' Motion to Strike, [Filing No. 56], and Emmis' hearsay objections. For the reasons set forth below, the Court **GRANTS** Emmis' Motion to Strike, [Filing No. 56], **SUSTAINS** Emmis' hearsay objections, and **GRANTS** Emmis' Motion for Summary Judgment, [Filing No. 40.]

**I.
STANDARD OF REVIEW**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the

asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary

judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them." *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### STATEMENT OF FACTS

The following factual background is set forth pursuant to the standards detailed above. The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

**A. Emmis' Anti-Harassment Policy**

On September 10, 2014, Emmis offered Ms. Slentz a job as the WFNI digital brand manager, beginning on September 29, 2014. [Filing No. 41-3 at 2.] She accepted the position after negotiating a higher salary. [Filing No. 41-1 at 8-9.]

At the beginning of her employment, Ms. Slentz received training on Emmis' internal policies and expectations about how employees were to treat each other. [Filing No. 41-1 at 12-13.] Ms. Slentz knew that she was to contact her direct supervisor if she experienced any issues with the company's policies, and she was provided contact information for Emmis' human resources department. [Filing No. 41-1 at 14.] Ms. Slentz further received the Emmis employee handbook, which outlines Emmis' anti-harassment policy and instructs employees how to report

harassment. [Filing No. 41-1 at 18-19; Filing No. 41 at 8-34.] Ms. Slentz was aware of Emmis' anti-harassment policy and how to report it if she felt that she was being harassed. [Filing No. 41-1 at 17.]

### B. Digital Brand Manager of WFNI and WIBC Sports Radio

Ms. Slentz was first hired as a digital brand manager of WFNI sports radio and reported to Larry Downes. [Filing No. 41-1 at 8; 24.] As digital branch manager, Ms. Slentz curated content, managed social media channels, created content, maintained the company's website, and created and distributed a weekly email. [Filing No. 41-1 at 27.] She and Mr. Downes had weekly meetings to discuss what was going on and the best way to approach her work. [Filing No. 41-1 at 33.] Mr. Downes was never critical of Ms. Slentz's performance. [Filing No. 41-1 at 33.] Ms. Slentz maintained her role as Digital Branch Manager for WFNI from October 2014 through May 2015. [Filing No. 41-1 at 34.]

In May 2015, Emmis let Mr. Downes go and promoted Jordyn Byington, a female, to his position. [Filing No. 41-1 at 24-25; 35.] Ms. Byington restructured the department and Ms. Slentz became the digital content manager for both WFNI and another talk station, WIBC. [Filing No. 41-1 at 35.] Ms. Slentz received a pay raise of $3,500.00. [Filing No. 41-1 at 35-36.] This promotion instantly doubled Ms. Slentz's workload, which she believed "was a lot to take on." [Filing No. 41-1 at 38.] Ms. Slentz felt that the additional volume of work was unsustainable. [Filing No. 41-1 at 38.]

Ms. Slentz had several conversations with Ms. Byington about her workload. [Filing No. 41-1 at 39-40.] Ms. Byington tried to help Ms. Slentz with the workload, but it remained unchanged. [Filing No. 41-1 at 40.] Ms. Slentz "eventually" thought about leaving because of the increased workload. [Filing No. 41-1 at 40.]

4

### C. Producers at Emmis

Tony Donohue and Kyle Knezevich were producers at Emmis. [[Filing No. 41-1 at 60](#).] Several times per week, Ms. Slentz worked on social media and digital content with the producers, who were in charge of commercials and running the sound board during radio shows. [[Filing No. 41-1 at 60-61](#).] The producers contributed content to the website and were given access to Emmis' Twitter and Facebook accounts. [[Filing No. 41-1 at 60](#).]

Neither Mr. Donohue nor Mr. Knezevich had the authority to hire or fire Ms. Slentz, evaluate her performance, or affect her pay. [[Filing No. 41-1 at 61](#).] Mr. Donohue and Mr. Knezevich worked on a different floor than Ms. Slentz. [[Filing No. 41-1 at 61](#).]

### D. Claims about Mr. Donohue

In March 2015, Mr. Donohue approached Ms. Slentz and told her he read an article she wrote for the Huffington Post about dating as a bisexual woman. [[Filing No. 41-1 at 62](#).] When Ms. Slentz asked him his thoughts on the article, he "just laughed and said it was interesting." [[Filing No. 41-1 at 62](#).] She later was told that he had shown the article to most of the people on the sixth floor, and also made jokes and told people Ms. Slentz was bisexual. [[Filing No. 41-1 at 62](#).] She learned the extent of Mr. Donohue's remarks after employee Robin Scott reported to her that Mr. Donohue was making jokes about both Ms. Slentz and her husband's sexuality. [[Filing No. 41-1 at 62](#), [Filing No. 41-1 at 68](#).]

Ms. Slentz told Mr. Downes about what Mr. Donohue was saying. [[Filing No. 41-1 at 62](#).] After Mr. Downes told Greg Rackstraw, Mr. Donohue's boss, what occurred, Mr. Donohue was written up and required to attend a sit-down meeting in which he was told to stop his inappropriate behavior. [[Filing No. 41-1 at 62-63](#).]

After Mr. Downes was let go in May 2015, Mr. Donohue began complaining heavily about Ms. Slentz's work. [Filing No. 41-1 at 63.] Mr. Donohue told "a large amount of people" that Ms. Slentz was stupid and called her a "bitch," though Ms. Slentz never personally observed any of these remarks. [Filing No. 41-1 at 63; Filing No. 41-2 at 4.] Ms. Slentz also never personally heard Mr. Donohue make any remarks about her sexuality or the article she wrote for the Huffington Post, aside from his initial conversation with her. [Filing No. 41-1 at 67-68.]

In August 2015, Ms. Slentz spoke with Brooke Gross, who worked in the human resources department, about taking leave to care for her stepmother. [Filing No. 41-1 at 63; Filing No. 41-2 at 6-7.] During this conversation, Ms. Slentz "also decided to talk to [Ms. Gross] about [Mr. Donohue] … constantly telling everyone how horrible [she was]." [Filing No. 41-1 at 63.] Ms. Slentz told Ms. Gross that she heard from others that Mr. Donohue was talking to non-supervisors about her work performance. [Filing No. 41-2 at 7-8.] Ms. Slentz further complained that Mr. Donohue would send her work-related emails and text messages late at night, which Ms. Slentz thought could have been handled without her input. [Filing No. 41-2 at 12-14.] None of these text messages or emails related to Ms. Slentz's sexual orientation or were sexual in nature. [Filing No. 41-2 at 14-15.]

Following this conversation, Ms. Gross began an investigation into Ms. Slentz's complaints about Mr. Donohue, but determined that Mr. Donohue did not sexually harass Ms. Slentz in violation of Emmis' policies. [Filing No. 41-4 at 3.] Despite this finding, Ms. Gross and Mr. Donohue's supervisor met with Mr. Donohue to remind him of Emmis' policies and expectations. [Filing No. 41-4 at 3.] They also made sure that he understood that inappropriate personal comments would not be tolerated, and reminded him of the proper channels to address employees' performance issues. [Filing No. 41-4 at 3.] Ms. Gross informed Ms. Slentz of this

meeting and told Ms. Slentz that Mr. Donohue was instructed to cease all inappropriate behavior. [Filing No. 41-4 at 3-4.] Ms. Slentz did not bring any further concerns regarding Mr. Donohue to Ms. Gross' attention. [Filing No. 41-4 at 4.] Following the August 2015 meeting between Ms. Gross and Mr. Donohue, Ms. Slentz did not receive any more text messages or emails from Mr. Donohue or hear that Mr. Donohue was making any offensive or inappropriate comments. [Filing No. 41-2 at 9-11.]

### E. Claims about Mr. Knezevich

In May 2015, Mr. Knezevich and Ms. Slentz were backstage at a concert at the Indianapolis 500 when Mr. Knezevich "put his hand on [Ms. Slentz's] arm and told [her] that he is not a home wrecker, but he would and that [she is] just so sexy." [Filing No. 41-2 at 24.] Ms. Slentz laughed and brushed off the incident and everything seemed okay after that. [Filing No. 41-2 at 23-24.] Ms. Slentz met up with Mr. Knezevich and his friends later and they gave her a ride to the gate. [Filing No. 41-2 at 22.] After that incident, Mr. Knezevich became very critical of Ms. Slentz's work and began sending her emails about how he did not like how she worded things. [Filing No. 41-2 at 19-22.] All of Mr. Knezevich's criticisms related to Ms. Slentz's work performance. [Filing No. 41-2 at 22.] Ms. Slentz never reported to Ms. Gross or anyone in the human resources department that Mr. Knezevich made a pass at her or became overly critical of her work performance. [Filing No. 41-2 at 32.]

### F. Ms. Slentz's resignation

On November 16, 2015, Ms. Slentz announced her resignation and gave Ms. Byington her two-week notice. [Filing No. 41-2 at 64.] Ms. Slentz told Ms. Byington that Emmis and the job were not for her anymore. [Filing No. 41-2 at 66.] She also stated that she "felt like the producers were really trying to push [her] out," which affected her decision. [Filing No. 41-2 at 66.] Ms.

7

Slentz stated that the "constant, unrelenting criticism" pushed her out at Emmis. [Filing No. 41-2 at 66.]

Ms. Byington asked Ms. Slentz to stay until the end of the year, which she agreed to do. [Filing No. 41-2 at 64-65.] Ms. Slentz ultimately resigned on December 30, 2015. [Filing No. 41-1 at 40.]

Ms. Slentz resigned in part due to a "very hostile work environment" and because she "had far too much work and [] was being heavily criticized, and the atmosphere was becoming a place where there was [sic] a lot of terrible things being said about [her] to a lot of people." [Filing No. 41-1 at 40-41.] Ms. Slentz admitted that the criticism and heavier workload "[were] a part of the hostile work environment." [Filing No. 41-2 at 56.] With respect to the workload, Ms. Slentz claims that there was no way to succeed in her position with the limited resources Emmis provided. [Filing No. 41-2 at 57.]

Ms. Slentz was never disciplined, given a negative performance evaluation, placed on a performance improvement plan, or threatened with termination. [Filing No. 41-2 at 51-52.]

### III.
### EVIDENTIARY MATTERS

Before addressing the merits of Ms. Slentz's case, the Court will first consider Emmis' Motion to Strike both Ms. Slentz's Appendix of Exhibits and Ms. Slentz's Surreply in Opposition to Motion for Summary Judgment ("Surreply"). [Filing No. 54 (objecting to Filing No. 54, Filing No. 55).] The Court will then consider Emmis' hearsay objections.

**A. Motion to Strike**

Emmis moves to strike the three declarations attached to Ms. Slentz's Surreply, [Filing No., 54-1; Filing No. 54-2; Filing No. 54-3], as well as the Surreply itself, [Filing No. 55], to the extent that it relies on these additional declarations. [Filing No. 56.] Ms. Slentz asserts that she

8

filed her Surreply to address new evidence submitted by Emmis and to respond to Emmis' objections to Ms. Slentz's evidence offered with her brief. [Filing No. 55.]

Emmis argues that these declarations should have been submitted with Ms. Slentz's response brief and notes that Ms. Slentz offers no excuse for presenting this evidence at this late juncture. The Court agrees. Ms. Slentz submits the affidavits in an attempt to circumvent Emmis' hearsay objections, but such a cure comes too late. Local Rule 56-1(b) requires a party opposing summary judgment to file "a response brief and *any evidence* … that the party relies on to oppose its motion." (emphasis added). Ms. Slentz claims that the new declarations are in response to hearsay objections raised by Emmis, but waiting until her surreply to set forth admissible evidence is improper. *See U.S. ex rel. Abner v. Jewish Hosp. Health Care Servs.*, No. 4:05-cv-106-RLY-WGH, 2010 WL 811288, \*1 (S.D. Ind. Mar. 3, 2010) ("Pursuant to Federal Rule of Civil Procedure 56(e), the party opposing a motion for summary judgment must, by affidavit or other evidence, set out specific facts showing a genuine issue for trial. The party is not entitled to hold back evidence until the filing of a surreply."). Although Ms. Slentz may file her surreply given Emmis' objections "to the admissibility of the evidence in [her] response," Local Rule 56-1(d), "the Local Rules are clear that all of [Ms. Slentz's] evidence should have been filed with the response brief." *Estate of Williams v. Ind. State Police*, 26 F. Supp. 3d 824, 838 (S.D. Ind. 2014) (citing Local Rule 56-1(b)).

The declarations submitted by Ms. Slentz are untimely and therefore Emmis' Motion to Strike, [Filing No. 56], is **GRANTED**. The Court will consider Ms. Slentz's arguments in her Surreply, [Filing No. 55], but only insofar as they do not rely on any of the stricken declarations.

**B. Hearsay**

Emmis argues that Ms. Slentz has failed to set forth any admissible evidence to survive summary judgment because the majority of her facts are inadmissible hearsay that must be stricken

9

and disregarded by the Court. [Filing No. 48 at 4-8.] Emmis claims that Ms. Slentz's sole evidence that Mr. Donohue called her a "bitch" to everyone in the office is her own testimony in reliance on what other co-workers told her Mr. Donohue said to them. In her response, Ms. Slentz did not submit any of her co-workers' affidavits or deposition testimony, or any testimony from Mr. Donohue, to verify that Mr. Donohue made these remarks.

Admissibility is a "threshold question because a court may consider only admissible evidence in assessing a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) (citing *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 533 (7th Cir. 2003) (inadmissible evidence cannot overcome a motion for summary judgment)). "A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment." *Id.*; *see also Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) ("[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in trial.").

In response, Ms. Slentz claims, citing the Second Circuit's decision in *Schwapp v. Town of Avon*, 118 F.3d 106 (2d Cir. 1997), that a district court may not "exclude otherwise relevant conduct simply because the incidents occurred outside of the plaintiff's presence." [Filing No. 45 at 10.][1] In *Schwapp*, the district court previously excluded two affidavits because the racial remarks cited in them were made outside the presence of the plaintiff. 118 F.3d at 111. The plaintiff personally witnessed four instances of racially derogatory remarks and another eight

---

[1] Ms. Slentz also cites to the Eighth Circuit's decision in *Carter v. Chrysler Corp.*, which overruled the objection that plaintiff's secondhand knowledge of sexual harassment about her in the form of graffiti in the men's restroom constituted inadmissible hearsay. 173 F.3d 693, 701 n. 7 (8th Cir. 1999). It is unclear from *Carter* how this information is admissible, i.e. in what form it is presented, as the court only stated that "her co-workers told her that there was graffiti" about the plaintiff in the men's restroom and that some of her supervisors had "direct knowledge of offensive conduct from their own observations of the restroom graffiti." *Id.* at 697. Thus, *Carter* does not assist the Court with its analysis on whether Ms. Slentz's hearsay statements may be considered.

incidents that occurred outside of his presence. *Id*. at 108-09. The Second Circuit found reversible error on the district court's exclusion of the evidence, noting that second-hand knowledge of a "racially derogatory comment … of a fellow employee or supervisor also can impact the work environment." *Id.* (internal citations omitted).

Unlike *Schwapp*, which addresses a relevancy issue, the only remarks cited by Ms. Slentz about her gender or sexual orientation are those she heard from other employees about what Mr. Donohue allegedly said about her. This is impermissible hearsay, and perhaps double hearsay. Fed. R. of Evid. 801. Ms. Slentz did not submit any affidavits or deposition testimony from her co-workers or Mr. Donohue about the alleged statements; therefore, she has not provided the necessary foundation evidence to establish a hearsay exception or the independent veracity of these claims. Because this evidence is impermissible hearsay, it cannot be considered to substantiate Ms. Slentz's claims and cannot be considered by the Court in its analysis. *Gunville*, 583 F.3d at 985. Accordingly, Emmis' hearsay objection is **SUSTAINED**.

## IV.
### DISCUSSION

**A. Hostile Work Environment Claim**

In any event, even considering the statements to which Emmis objects, Ms. Slentz's claims fail as a matter of law as discussed below.

In addition to prohibiting discrimination that has direct economic consequences, Title VII also bars employers from requiring employees to work in a discriminatorily hostile or abusive environment. *Boss v. Castro*, 816 F.3d 910, 919-20 (7th Cir. 2016) (citation omitted). An employer violates Title VII when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Alexander v. Casino Queen, Inc.*, 739

F.3d 972, 982 (7th Cir. 2014) (quoting *Mendenhall v. Mueller Streamline Co.*, 419 F.3d 686, 691 (7th Cir. 2005)). To establish a hostile work environment claim, a plaintiff must prove: "(1) that the work environment was both subjectively and objectively offensive; (2) that the harassment was based on membership in a protected class; (3) that the conduct was severe or pervasive; and (4) that there is a basis for employer liability." *Id.* "In addition to the questions of severity and pervasiveness, in determining whether an environment is sufficiently abusive to be actionable," the Court is guided by factors including "whether [the] conduct is 'physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance.'" *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 897 (7th Cir. 2016) (quoting *Porter v. City of Chicago*, 700 F.3d 944, 956 (7th Cir. 2012)). Moreover, the hostile work environment must be both objectively and subjectively hostile; "[t]hat is, the plaintiff must subjectively believe that the harassment was sufficiently severe or pervasive to have altered the working environment, and the harassment must also be sufficiently severe or pervasive, from the standpoint of a reasonable person, to create a hostile work environment." *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 685 (7th Cir. 2010) (citation omitted).

**1. Claims against Mr. Knezevich**

Ms. Slentz claims that Mr. Knezevich's constant criticism following his failed sexual advance constituted harassment sufficient to establish her hostile work environment claim. Ms. Slentz fails, however, to demonstrate that Emmis is liable for Mr. Knezevich's conduct, for it was never put on notice of her claims against him. "An employer can be held responsible for the conduct of coworkers … only if it 'knew or should have known' about the harassment and failed to take reasonable steps to remedy the harassment once it was on notice." *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 976 (7th Cir. 2004) (quoting *Berry v. Delta Airlines, Inc.*, 260

12

F.3d 803, 811 (7th Cir. 2001)). "If an employer takes reasonable steps to discover and rectify the harassment of its employees … it has discharged its legal duty." *Id.* "An aggrieved employee must at least report—clearly and directly—nonobvious policy violations troubling [her] so that supervisors may intervene." *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 392 (7th Cir. 2010); *see also Durkin v. City of Chicago*, 341 F.3d 606, 612-13 (7th Cir. 2003) (an employer will not be liable for alleged coworker harassment "when a mechanism to report the harassment exists, but the victim fails to utilize it."). Although Ms. Slentz claims that she complained to Ms. Byington of Mr. Knezevich's "relentless criticisms of [her]," there is nothing to suggest that any of these criticisms related to anything other than her work-product, and such complaints are too vague to put Emmis, or Ms. Byington, on notice of any alleged sexual harassment by Mr. Knezevich. *See Zimmerman v. Cook County Sheriff's Dep't*, 96 F.3d 1017, 1019 (7th Cir. 1996) (when an employee is not complaining of pervasive harassment, an employer does not have a duty to investigate and remedy the situation "until the employee complains of sexual harassment or information about the harassment comes to the employer's attention from some other quarter.") "[A] successful hostile work environment claim requires a plaintiff to demonstrate that the harassment was *based on* his or her protected status and that the employer was negligent in not discovering or remedying it." *Velez v. City of Chicago*, 442 F.3d 1043, 1048 (7th Cir. 2006) (emphasis in original). None of Ms. Slentz's complaints to Ms. Byington related to her protected status or revealed the incident at the Indianapolis Motor Speedway, and therefore, Emmis was never provided notice of any sexual harassment. Accordingly, Emmis cannot be liable for failing to address Mr. Knezevich's behavior.

### 2. Claims against Mr. Donohue

Aside from not presenting any admissible evidence to establish the veracity of her claims against Mr. Donohue, Ms. Slentz has further failed to establish that his alleged harassment subjected her to an abusive working environment as a matter of law.

Ms. Slentz contends that Mr. Donohue "frequently referred to Ms. Slentz as a 'bitch' or a 'stupid bitch.'" [Filing No. 45 at 14.] It is true that the term "bitch" is gender-specific and can be inferred to harbor animus in the context of a sexual harassment claim. *See Passananti v. Cook County*, 689 F.3d 655, 665 (7th Cir. 2012) ("The word [bitch] is gender-specific, and it can reasonably be considered evidence of sexual harassment"). Ms. Slentz, however, presents no admissible evidence to establish that Mr. Donohue made these remarks, much less establish their frequency. Ms. Slentz's bald assertion about what others told her about the alleged sexually charged comments is not sufficient to show that she was subject to a hostile work environment; Ms. Slentz never witnessed this behavior firsthand. Furthermore, Ms. Slentz testified that after Mr. Downes spoke with Mr. Donohue, she never personally heard him say anything about the article or her sexuality thereafter. The only admissible evidence submitted by Ms. Slentz are her personal interactions with Mr. Donohue and Mr. Knezevich involving criticisms of her work, which alone are not actionable under Title VII. *Smith v. Sheahan*, 189 F.3d 529, 532-33 (7th Cir. 1999) (citations omitted) ("Not all offensive workplace behavior violates the law…. To be actionable, the offensive conduct must be based on one of the characteristics protected by Title VII, such as sex."). Because Ms. Slentz is unable to substantiate that she was subject to "severe or pervasive" harassment "based on [her] membership in a protected class," her hostile work environment claim fails as a matter of law. *Alexander*, 739 F.3d at 982.

But even if Mr. Donohue joked about Ms. Slentz's sexuality to "most of the employees on the sixth floor," [Filing No. 41-1 at 62], and referred to her as "stupid and a bitch" to other people, [Filing No. 41-2 at 4], those actions are insufficient to create an objectively hostile work environment. The Seventh Circuit has drawn the following line between what is and is not objectively hostile, which is "not always easy." *Turner*, 595 F.3d at 685 (quoting *Baskersville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995)). The Court in *Turner* noted:

> On one side lie sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures. On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers.

*Id.* Mr. Donohue's derogatory comments fall under the latter category, particularly given the fact that they were never made in Ms. Slentz's presence, and there is no evidence that Mr. Donohue ever intended Slentz to learn of them. Although Ms. Slentz rightfully feels this language should not be used in the workplace, she has failed to demonstrate that the alleged harassment was severe or pervasive enough to rise to the level of a hostile work environment.

Finally, as is the case with Mr. Knezevich, Ms. Slentz cannot prove that Emmis is liable for Mr. Donohue's alleged harassment. As explained more fully above, "[a]n employer is only liable for harassment from an employee's co-workers if it was negligent in its response to the harassment." *Chaib v. Indiana*, 744 F.3d 974, 985 (7th Cir. 2014), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). "If an employer takes reasonable steps to discover and rectify the harassment of its employees … it has discharged its legal duty." *Wyninger*, 361 F.3d at 976 (quoting *Berry*, 260 F.3d at 811).

Ms. Slentz admitted that she was aware of how to report issues of harassment and formally did so when she learned that Mr. Donohue was joking around the office about her sexuality and

15

the article she wrote. Ms. Slentz reported the issue to Mr. Downes, who addressed the issue with Mr. Donohue's boss, which resulted in a write-up for Mr. Donohue and an admonishment to cease this behavior. The only other time Ms. Slentz reported Mr. Donohue's behavior was in August 2015 when she told Ms. Gross that Mr. Donohue commented on her article and had been very critical of her work. Ms. Gross conducted an investigation and determined that Mr. Donohue had not sexually harassed Ms. Slentz. Nonetheless, Ms. Gross met with Mr. Donohue and his supervisor to remind Mr. Donohue of Emmis' policies and expectations and to make sure that he understood that inappropriate personal comments would not be tolerated. She further reminded Mr. Donohue of the proper channels to address any potential workplace criticisms he might have. Ms. Gross told Ms. Slentz about this conversation, after which Ms. Slentz never raised any other objections about Mr. Donohue to Ms. Gross. It is clear that when confronted with Ms. Slentz's two complaints about Mr. Donohue's behavior, Emmis took appropriate steps to remedy her concerns. Accordingly, Ms. Slentz has failed to establish a basis for Emmis' liability.

### B. Retaliatory Harassment Claims

Ms. Slentz also claims that criticisms of her "escalated sharply" after she complained about Mr. Donohue and rebuffed Mr. Knezevich's advances, which constitutes retaliatory harassment. [Filing No. 45 at 18.] Emmis argues that Ms. Slentz's retaliatory harassment claims are waived because she failed to check the retaliation box in her EEOC charge and does not provide any information in the Charge to allege retaliatory harassment. [Filing No. 48 at 12.]

A plaintiff "may not complain to the EEOC of certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). However, such claims may still be considered when they are "like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations."

16

*Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). In the instant case, although Ms. Slentz did not check the box for retaliation on her EEOC Charge, she stated in the Charge that after she rebuffed Mr. Knezevich's advances, "[Mr.] Knezevich joined [Mr.] Donohue in complaining about her performance, and escalated his complaints along with [Mr.] Donohue." [Filing No. 48-1 at 26.] Given the posture on summary judgment, this statement sufficiently alleges that Mr. Knezevich engaged in retaliatory behavior against Ms. Slentz. Ms. Slentz failed, however, to allege any instances of retaliatory harassment against Mr. Donohue in her EEOC Charge and has therefore waived her right to bring them now.

Even if Ms. Slentz adequately raised her retaliatory harassment claims against both Mr. Donohue and Mr. Knezevich in her EEOC Charge, they do not survive summary judgment. To establish a retaliatory harassment claim, Ms. Slentz must show that the retaliatory harassment is "severe enough to cause a significant change in the plaintiff's employment status." *Stutler v. Ill. Dep't of Corrs.*, 263 F.3d 698, 703 (7th Cir. 2001). Although this is not limited to loss in pay or benefits and can encompass various forms of adversity, "not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). A claim will be actionable only if there is a "'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Bell v. Envntl. Prot. Agency*, 232 F.3d 546, 555 (7th Cir. 2000) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

First, as stated in greater detail above, Ms. Slentz has failed to establish with admissible evidence that she was subject to severe harassment on account of her sex. Moreover, Ms. Slentz cannot show how either Mr. Donohue or Mr. Knezevich's actions resulted in a significant change in her employment status, particularly given the fact that she agreed to stay on for more than a

month following her resignation announcement. *See Stutler*, 263 F.3d at 704 (citation omitted) (fact that plaintiff alleging retaliatory harassment confessed that she "loved" her job and subsequently requested to return to the same department where the alleged harassment took place "cuts against a finding that [her fellow employee]'s behavior" was anything other than a mere inconvenience). And while the reassignment to Ms. Slentz of the second radio station significantly altered her workload, this decision was made prior to any complaints, criticisms, or approaches by either Mr. Donohue or Mr. Knezevich. Ms. Slentz cannot prove that she suffered severe harassment that resulted in a "significant change" in her employment status as a result of Mr. Donohue and Mr. Knezevich's criticisms, and therefore, her retaliatory harassment claims fail as a matter of law. *Id* at 703.

## V.
## CONCLUSION

For the foregoing reasons, **GRANTS** Emmis' Motion to Strike, [56], **SUSTAINS** Emmis' hearsay objections, and **GRANTS** Emmis' Motion for Summary Judgment, [40]. Final judgment shall enter accordingly.

Date: 2/5/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**